**Seth H. Row**, OSB No. 021845
seth.row@millernash.com
**Katelyn J. Fulton**, OSB No. 183404
katelyn.fulton@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

>        *Attorneys for Proposed Amici Curiae United*
>        *Policyholders, Business Interruption Group,*
>        *and National Independent Venue Association*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAKOTA VENTURES, LLC d/b/a KOKOPELLI GRILL and COYOTE BBQ PUB, individually and on behalf of all others similarly situated, | No. 3:20-cv-00630-HZ |
| Plaintiffs, | MOTION BY UNITED POLICYHOLDERS, BUSINESS INTERRUPTION GROUP, AND NATIONAL INDEPENDENT VENUE ASSOCIATION TO APPEAR AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS |
| v. | |
| OREGON MUTUAL INSURANCE CO., | |
| Defendant. | |

**LR 7-1 CERTIFICATION**

Counsel for proposed *amici curiae* indicated below certifies that prior to filing this motion counsel conferred with counsel for plaintiff and defendant.  Plaintiff does not oppose the relief sought here; Defendant opposes the relief sought.

Page 1 -    Motion to Appear as *Amici Curiae*

4837-3179-2072.3

## MOTION

Proposed *amici curiae* parties move the Court for an Order permitting them to appear as *amici curiae* in support of Plaintiff's response to Defendant's Motion to Dismiss (Ct. Rec. 40) and to consider the attached brief in connection with that motion.

## MEMORANDUM

A.    Legal Standard.

The Court has broad discretion to appoint amicus curiae.  *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) (district courts have inherent authority and broad discretion to grant leave to file an amicus brief); *Stauart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013) (same); *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D. D.C. 2008) (same); *James Square Nursing Home, Inc. v. Wing*, 897 F. Supp. 682, 683 n.2 (N.D. N.Y. 1995) (same).

The classic role of an amicus curiae is to assist the Court "in a case of general public interest, supplementing the efforts of counsel [for the parties], and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co., Inc. v. Comm'r of Labor and Indus.*, 694 F.2d 203 204 (9th Cir. 1982).  *Amici* assist "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 808 (3d Cir. 1991) (citations omitted).

Courts often grant leave to nonprofit organizations like United Policyholders and the other proposed *amici* with knowledge and perspective that may assist in the resolution of the case.  *See Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 728 (D. Md. 1996); *see also Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 357 (E.D. Va. 2009).

This Court has so exercised its inherent authority and discretion previously. *WildEarth Guardians v. Jeffries*, 370 F. Supp. 3d 1208, 1228 (D. Or. 2019), *appeal dismissed,* No. 19-35178, 2019 WL 2613191 (9th Cir. June 12, 2019), and *appeal dismissed,* No. 19-35179, 2019 WL 2552333 (9th Cir. June 13, 2019); *Central Oregon Landwatch v. Kent Connaughton et al.,* Case No. 6:13-cv-0207-AA (D. Or., August 10, 2014) (unpublished order, Ct. Rec. 121) (granting opposed motion to appear as *amici* where "[a]pplicants timely moved for permission to provide unique information and perspective concerning a matter of broad general public interest and specific local interest that will aid the Court and supplement the efforts of existing counsel.").

Although the Federal Rules of Civil Procedure do not contain a rule governing the filing of *amicus* briefs, district courts often look to Federal Rule of Appellate Procedure 29 and United States Supreme Court Rule 37 for guidance.  *See, e.g.*, *Am. Humanist Ass'n v. Mid-Nat'l Capital Park & Planning Comm'n*, 147 F. Supp. 3d 373, 389 (D. Md. 2015); *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500-01 (S.D. Fla. 1991).  Rule 29 provides that a prospective *amicus* must file, along with the proposed brief, a motion that states "the movant's interest" and "the reason why an *amicus* brief is desirable and why the matters asserted are relevant to the disposition of the case."  Fed. R. App. P. 29(a)(3).

B.       Interest of *Amici* in This Case.

The pending motion to dismiss is one of the earliest challenges nationwide, and *the* earliest challenge in Oregon, to a policyholder's ability to state a claim for business interruption insurance coverage stemming from the SARS-CoV-2/COVID-19 pandemic.  The nature of the arguments raised by Defendant are sweeping in scope and touch on issues that are raised in similar litigation now pending in virtually every federal judicial district in the country.[1]

---

[1] *See* University of Pennsylvania Carey Law School "Covid Coverage Litigation Tracker," available at https://cclt.law.upenn.edu/ (last visited July 1, 2020).

Page 3 -    Motion to Appear as *Amici Curiae*

The application and interpretation of insurance contracts under Oregon law requires special judicial handling.  *See Hoffman Constr. Co. v. Fred S. James & Co. of Or.*, 313 Or. 464, 469-71, 836 P.2d 703 (1992) (articulating Oregon approach to interpretation of insurance policies including differences from ordinary contract interpretation).  Not only are insurance contracts adhesive in nature, which compels judicial balancing, but effectuating indemnification in case of loss is a fundamental economic and social objective that courts can advance.  Proposed *amici* respectfully seek to assist this Court in fulfilling these important roles.

    1.      United Policyholders

United Policyholders ("UP") is a non-profit, tax-exempt, charitable organization founded in 1991 that provides valuable information and assistance to the public on insurers' duties and policyholders' rights.  UP monitors developments in the insurance marketplace and serves as a voice for policyholders in legislative and regulatory forums. UP helps preserve the integrity of the insurance system by educating consumers and advocating for fairness in sales and claim practices.  Grants, donations and volunteers support the organization's work.  UP does not accept funding from insurance companies.

UP's work is divided into three program areas:  *Roadmap to Recovery™* (disaster recovery and claim help), *Roadmap to Preparedness* (disaster preparedness through insurance education), and *Advocacy and Action* (advancing pro-consumer laws and public policy through submission of *amicus curiae*).  UP hosts a library of informational publications and videos related to personal and commercial insurance products, coverage and the claims process at www.uphelp.org.

In furtherance of its mission, UP regularly appears as *amicus curiae* in courts nationwide to advance the policyholder's perspective on insurance cases likely to have widespread impact.  UP regularly consults with the insurance commissioners of many states, including Oregon, and has previously appeared as *amicus curiae* in cases involving Oregon

4837-3179-2072.3

insurance law at the Ninth Circuit Court of Appeals[2] and the Oregon Court of Appeals and the Oregon Supreme Court.[3]  UP's *amicus* brief was cited in the U.S. Supreme Court's opinion in *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999).

UP seeks to fulfill the classic role of *amicus curiae* by assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that may have escaped consideration.  *Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982).  As commentators have stressed, an *amicus* is often in a superior position to focus the court's attention on the broad implications of various possible rulings.  R. Stern, *E. Greggman & S. Shapiro, Supreme Court Practice*, 570-71 (1986) (quoting Ennis*, Effective Amicus Briefs*, 33 CATH. U. L. REV. 603, 608 (1984)).

2.      National Independent Venue Association

The National Independent Venue Association ("NIVA") is a trade association formed in 2020 just prior to the pandemic, with nearly 2,000 charter members in all 50 states. NIVA's members are independent performing-arts venues, both for- and non-profit, employing thousands of people, and are part of the cultural backbone of their communities.  Representative Oregon members include Mississippi Studios and Revolution Hall in Portland; McMenamins in Portland and elsewhere; Portland'5 Centers for the Arts; Les Schwab Amphitheater and Bend Summer Concerts in Bend; The Historic Rogue Theatre in Grants Pass; and Catfish Lou's in Beaverton.  Outside of Oregon, well-known members include the 9:30 Club in Washington, D.C.; World Café Live in Philadelphia, Pennsylvania; Pabst Theater Group in Milwaukee,

---

[2] *See, e.g., Amicus* Brief in *Howisey v. Transamerica Life Insurance Co.,* U.S Court of Appeals for the Ninth Circuit No. 17-36045 (brief filed 2018; motion to appear granted 765 F. App'x 219, 220, n.1 (9th Cir. 2019)).

[3] *See, e.g., Amicus* Brief (with Port of Portland) in *Allianz Global Risks US Ins. Co. v. ACE Property & Cas. Ins. Co. et al.*, Supreme Court of the State of Oregon, No. CA A159758 (brief filed April, 2020; motion to appear allowed by Court of Appeals, 297 Or. App 434 (2019)).

Wisconsin; and the Red River Cultural District in Austin, Texas.  More information is available at https://www.nivassoc.org/.

3.    Business Interruption Group

The Business Interruption Group ("BIG") is a coalition of thousands of businesses employing millions of workers across every sector of the economy, including the restaurant, hospitality, entertainment, real estate, sport, and travel industries among others.  BIG was founded after witnessing the misdirection of information flowing to policyholders in the aftermath of COVID-19's impact in the U.S.  Thousands of businesses purchased property and business interruption insurance as a safety net for both their company and the workers they employ.  As businesses struggle to survive amid the COVID-19 pandemic, the non-profit fights for fair and equitable solutions that will ensure small and mid-size businesses receive the insurance coverage paid for and depended on to keep their doors open.  A large part of this is ensuring the accurate disbursement of policyholder's rights and the state of the insurance industry.

BIG's members include and stand for the protection of the 15.6 million American workers in the restaurant industry who contribute over $1 trillion to the economy annually, the hospitality industry who provide jobs to 8.3 million American workers contributing nearly $686 billion to the US GDP, and the business community as a whole.  Since BIG's first press release in April 2020, thousands of corporate and business alliance groups have signed up in support of the initiative including the Time Square Alliance (over a $1 billon impact), The NYC Hospitality Alliance, The Simon Wiesenthal Center, James Beard Foundation, The Culinary Institute of America, HGR Group Insurance, Independent Restaurant Coalition, Relief Opportunity for All

Page 6 -    Motion to Appear as *Amici Curiae*

Restaurants, and Ment'or BKB Foundation.  Today, BIG supports policyholders and dispels deceptive information through educational virtual town halls, and legislative and judicial advocacy.  More information can be found at www.werbig.org.

BIG is in a unique position to speak as a single voice for the many that comprise the business community.  BIG seeks to fulfill the classic role of *amicus curie* by drawing the Court's attention to law, broader issues, and implications of possible rulings that may have escaped consideration.

C.    The Issues Addressed by the *Amicus* Brief are Useful and Relevant to the Court's Review of Defendant's Motion to Dismiss.

Defendant's motion to dismiss asserts that a party cannot plead COVID-19 related business interruption coverage because "direct physical loss of or damage" cannot exist without structural alteration and/or visible contamination of property.  The public at large has a significant interest in this issue, which is being actively litigated throughout the country.  This Court's disposition of Defendant's motion has the potential to affect thousands of policyholders, not only in Oregon but nationwide.

The Court will benefit by reviewing the perspective of *amicus* UP, who has considerable experience in briefing courts on insurance coverage issues and an interest in ensuring a proper ruling under the doctrines of policy interpretation, and the perspective of hundreds of businesses that are members of proposed *amici* NIVA and BIG.  The proposed brief will provide *amici's* broad perspective on how the propensities of the SARS-CoV- 2 virus and its manifestation during this pandemic constitute "direct physical loss of or damage" under a property insurance policy, under Oregon law[4] and more generally.

/ / /

---

[4] Proposed *amici* take no position on the choice-of-law question here.

Page 7 -    Motion to Appear as *Amici Curiae*

**CONCLUSION**

For the reasons set forth above this Court should enter an order granting this motion for leave to file an *amici curiae* brief and accepting the proposed *amici curiae* brief in consideration of Defendant's motion to dismiss.  A copy of the proposed brief is attached as Exhibit A.

DATED this 27th day of August, 2020.

MILLER NASH GRAHAM & DUNN LLP

*s/ Seth H. Row*

Seth H. Row, OSB No. 021845
seth.row@millernash.com
Katelyn J. Fulton, OSB No. 183404
katelyn.fulton@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

*Attorneys for proposed Amici Curiae United Policyholders, Business Interruption Group and National Independent Venue Association*

4837-3179-2072.3

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Motion to Appear Amicus using the United States District Court for the District of Oregon's CM/ECF service, which will send notification of such filing to all counsel of record on this 27th day of August 2020.

 *s/ Seth H. Row*
Seth H. Row, OSB No. 021845
*Attorneys for Amici Curiae United Policyholders,*
*Business Interruption Group and National*
*Independent Venue Association*

Page 1 -    Certificate of Service

4837-3179-2072.3