IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAKOTA VENTURES, LLC, d/b/a
KOKOPELLI GRILL and COYOTE BBQ                No. 3:20-cv-00630-HZ
PUB, individually and on behalf of all
others similarly situated,                            OPINION & ORDER

                    Plaintiff,

     v.

OREGON MUTUAL INSURANCE CO.,

                    Defendant.

Adam J. Levitt
DiCello Levitt & Casey LLC
Ten North Dearborn Street, Eleventh Floor
Chicago, IL 60602

Kenneth P. Abbarno
DiCello Levitt Gutzler LLC
7556 Mentor Avenue
Mentor, OH 44060

Jennifer S. Wagner
Steve D. Larson
Stoll Stoll Berne Lokting & Shlachter
209 SW Oak Street, Suite 500
Portland, OR 97204

    Attorneys for Plaintiff

Clarke Benbow Holland
Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608

R. Lind Stapley
Jennifer Dinning
Jillian Hinman
Soha & Lang, PS
1325 Fourth Avenue, Suite 2000
Seattle, WA 98101

Jay W. Beattie
Lindsay Hart LLP
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201

    Attorneys for Defendant

Katelyn J. Fulton
Seth H. Row
Miller Nash Graham & Dunn LLP
111 SW Fifth Avenue, Suite 3400
Portland, OR 97204

    Attorneys for amici curiae United Policyholders, Business Interruption Group, and
National Independent Venue Association

HERNÁNDEZ, District Judge:

    Plaintiff Dakota Ventures, LLC filed this class action for breach of contract and

declaratory relief against Defendant Oregon Mutual Insurance Company alleging that Defendant

breached its insurance contract with Plaintiff when it denied coverage for losses stemming from

the COVID-19 pandemic. Defendant moved to dismiss Plaintiff's complaint and argues that no

provisions of the policy cover Plaintiff's losses. Plaintiff opposes the motion, and amici curiae United Policyholders, Business Interruption Group, and National Independent Venue Association join Plaintiff in opposition.

Many businesses suffered extreme hardship and financial loss as a result of the government shutdown orders that state and local governments nationwide issued to curb the spread of COVID-19 infections throughout the country. People across the world have lost their lives and livelihood as a result of the pandemic. The Court sympathizes with the plight of businessowners who suffered significant and even catastrophic financial losses as a result of the government closure orders. Plaintiff's business insurance policy, however, does not cover its loss of business income. The Court grants Defendant's motion to dismiss.

## BACKGROUND

Plaintiff Dakota Ventures, LLC, operates two restaurants in Port Angeles, Washington. First Am. Compl. ("FAC") ¶¶ 1–2, ECF 38. Plaintiff opened Kokopelli Grill in 2009 and opened Coyote BBQ Pub in 2015. *Id.* ¶ 1. Plaintiff purchased a "Businessowner's Protector Policy" for both businesses from Defendant. *Id.* ¶ 3. The Policy covers "direct physical loss or damage to Covered Property" and "direct physical loss of or damage to property" caused by "risks of direct physical loss." FAC Ex. B (Policy) at 6–7, 10–12[1], ECF 38-2.

In late February 2020, Washington Governor Inslee declared a State of Emergency statewide. FAC ¶ 39. In March 2020, Governor Inslee issued an executive order that prohibited people from gathering in any public venue for the purpose of consuming food and beverages. *Id.* ¶ 40. As a result, Plaintiff suspended indoor dining services and reduced its operations at both

---

[1] Citations to the Policy are to the ECF page numbers because Plaintiff did not page number the exhibit.

restaurants. *Id.* ¶¶ 10, 13. Plaintiff submitted an insurance claim to Defendant to recover its financial losses caused by the Governor's orders and the resulting reduced business operations. *Id.* ¶ 37. The same day, Defendant denied coverage because it found that no covered cause of loss had occurred that triggered coverage under the Policy's provisions. *Id.* ¶ 38. This lawsuit followed.

Section I of the Policy, which provides property coverage, states: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Policy 6. The capitalized words in that sentence are defined terms. The phrase "direct physical loss of or damage to" is not defined in the policy. "Covered Property" includes Buildings, Business Personal Property, or both, unless it is a kind of "Property Not Covered." *Id.* "Covered Cause of Loss" means risks of "direct physical loss" unless the loss is excluded or limited by other provisions in Section I of the Policy. *Id.* at 7.

The Policy provides "Additional Coverages" that include "Business Income," "Extra Expense," and "Civil Authority" coverages. The Business Income coverage provision states, in part:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 10. The Extra Expense coverage provides, in part:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

///

*Id.* at 11. The Civil Authority coverage states, in part:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* at 12.

The Policy also includes an endorsement that covers problems with ingress or egress due to direct loss or damage to adjacent property ("Ingress or Egress Endorsement"):

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused when ingress or egress to the described premises is physically prevented due to direct loss or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* at 66.

The Policy includes a "Sue and Labor" provision, which requires the insured to give prompt notice of the claim and take reasonable steps to mitigate damage in the event of a loss:

> You must see that the following are done in the event of loss or damage to Covered Property:
> (1) Notify the police if a law may have been broken.
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
> (4) Take all reasonable steps to protect the property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

*Id.* at 20.

Plaintiff alleges that "[t]he presence of COVID-19 on property damages property. It makes it unsafe. It makes it cause sickness." FAC ¶ 11. Plaintiff's claims are premised on its allegation that it "directly lost the functionality of its property for business purposes due to COVID-19." *Id.* ¶ 14. Plaintiff alleges that the Policy's Business Income, Extra Expense, Civil Authority, Ingress or Egress, and Sue and Labor provisions cover its financial losses and that

Defendant breached the insurance contract when it denied coverage under those provisions. *Id.* ¶¶ 65–105. Plaintiff further alleges that it is entitled to a declaratory judgment establishing that its business interruption losses are insured losses under the terms of its policy. *Id.* ¶¶ 112, 119, 126, 133, 140.

## STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**DISCUSSION**

Defendant moves to dismiss Plaintiff's FAC because no "direct physical loss of or damage to" property occurred that obligated Defendant to provide coverage under the Business Income and Civil Authority coverages. Defendant also argues that no "direct physical loss or damage to" property occurred that would provide coverage under the Extra Expense, Ingress or Egress, and the Sue and Labor provisions of the policy. Plaintiff argues that the Policy's undefined terms "loss of," "damage to" and "direct physical loss" cover the loss of the functionality and impairment of use of its covered properties for dine-in services due to the Washington Governor's closure orders issued in response to the pandemic.

## I.    Applicable Law

Both parties assert that there is no conflict between Oregon and Washington law concerning the interpretation of an insurance contract. Def. Mot. Dismiss (Def. Mot.) 10, ECF 40; Pl. Resp. Mot. Dismiss (Pl. Opp'n) 6–7, ECF 41. Defendant's arguments rely on both states' laws, and Plaintiff's response to Defendant's motion relies primarily on Oregon law. The Court finds that Oregon law applies to the resolution of Defendant's motion to dismiss.

A federal court sitting in diversity applies the forum state's choice of law rules to determine what law applies. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 975 (9th Cir. 2013). Thus, Oregon's choice of law rules will determine whether the Court should apply Oregon or Washington law to construe the terms of the Policy. *Id.*

Generally, when parties to a contract clearly express in the contract the law that applies, "the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen." Or. Rev. Stat. § ("O.R.S.") 15.350(1)–(2). Because the insurance contract does not contain a choice of law provision, O.R.S. 15.360 applies. O.R.S. 15.360 established the process

for determining what law applies when the parties have not made an effective choice of law in

the contract. Under that statute, the Court must identify the most appropriate law to apply by:

(1) Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;

(2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and

(3) Evaluating the relative strength and pertinence of these policies in:

(a) Meeting the needs and giving effect to the policies of the interstate and international systems; and

(b) Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states.

O.R.S. 15.360.

As to the first factor, the states with a relevant connection to the transaction and parties

are Oregon and Washington. Defendant's principal place of business is located in Oregon. Def.

Mot. 10. Defendant issued an insurance contract that insured Plaintiff, a Washington business,

and covered Plaintiff's business property located in Washington. Policy 2. The Policy lists an

insurance agent, Callis & Associates, with a Washington address, on the policy declarations. *Id.*

The Policy includes an endorsement entitled "Washington Changes – Defense Costs" which

outlines Defendant's right to recover defense costs incurred after issuing a reservation of rights

letter to the insured. *Id.* at 48. Plaintiff's alleged losses occurred in Washington. FAC ¶ 28. Thus,

both Oregon and Washington have a "relevant connection with the transaction or the parties[.]"

*See Portfolio Recovery Assoc., LLC v. Sanders*, 366 Or. 355, 371 (2020) (holding that O.R.S.

15.360 does not limit "relevant connection[s]" to those that existed at the time of the transaction).

The second factor asks the court to identify the policies undergirding any apparent conflict in the relevant states' law. The parties agree that there is no conflict between Oregon and Washington law concerning insurance policy interpretation. Pl. Opp'n 7; Def. Mot. 10–11. Thus, neither party identifies any competing policies under the second factor that would require the Court to evaluate their strength and pertinence under the third factor. Based on the parties' assertion that there is no conflict, the Court will apply Oregon law. *Portfolio Recovery Assoc.*, 366 Or. at 374 (". . . when the laws are not 'apparently conflicting,' there is no path to choosing the law of another state unless the parties have made an 'effective choice' of law to govern the contract claim.").

**II.    Coverage Provisions**

Defendant argues that Plaintiff's pandemic-related business losses are not covered under the terms of the Policy because no risk of direct physical loss to Plaintiff's business occurred. Determining whether insurance coverage exists is a two-step process. First, the insured bears the burden to establish that the loss falls within the policy's grant of coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas. Co.*, 222 Or. App. 453, 465 (2008). If the insured meets that burden, then the insurer bears the burden of establishing that an exclusion applies. *Id.*

To determine whether the Policy covers Plaintiff's alleged losses, the Court must first decide whether Plaintiff's alleged losses were caused by or resulted from a "Covered Cause of Loss." The Policy defines Covered Causes of Loss as "[r]isks of direct physical loss" unless otherwise limited or excluded under other provisions of the Property coverage. Policy 7. Next, the Court must determine whether a Covered Cause of Loss caused or resulted in (1) "direct

physical loss of or damage to property" as required to invoke coverage under the Business

Income and Civil Authority Coverages; (2) "direct physical loss or damage to property," as

required to invoke coverage under the Extra Expense coverage; or (3) "direct loss or damage to

property, other than at the described premises," necessary to trigger coverage under the Ingress

or Egress Endorsement. Policy 10–12, 66.

    Interpretation of an insurance policy is a question of law. *Holloway v. Rep. Indem. Co. of

Am.*, 341 Or. 642, 649 (2006). To interpret an insurance policy, the court must "ascertain the

intention of the parties to the insurance policy." *Id.* (citing *Hoffman Constr. Co. v. Fred S. James

& Co.*, 313 Or. 464, 469 (1992)). "If an insurance policy defines the phrase in question, [the

court] applies that definition." *Id.* at 650. If the insurance policy does not define the phrase, the

court first considers whether it has a plain meaning. *Id.* If so, the court applies that meaning and

conducts no further analysis. *Id.* If the phrase "has more than one plausible interpretation," then

the court examines "the phrase in light of the particular context in which that [phrase] is used in

the policy and the broader context of the policy as a whole." *Id.* (quotation marks and citation

omitted). If a term of the policy remains ambiguous after engaging in those exercises, then "'any

reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the

insurance company[.]'" *Id.* (quoting *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001)). A term

is ambiguous only if it is susceptible to more than one plausible interpretation. *Id.*

    As a threshold matter, the parties agree that the relevant language of the Policy is clear

and unambiguous. Def. Mot. 10–11; FAC ¶¶ 71, 79, 87, 103, 109, 116, 123, 130. Thus, the Court

will construe the terms of the Policy applying the definitions of the defined terms and the plain

meaning of the undefined terms. *Holloway*, 341 Or. at 650. *See also Columbiaknit, Inc. v.

Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *5 (D. Or. Aug. 4, 1999)

(finding the phrase "physical loss of or damage to covered property" unambiguous). The parties

also agree that it is appropriate for the Court to decide this motion based on the Court's review of

the Policy because it is incorporated by reference into Plaintiff's FAC. Def. Mot. Dismiss 9–10;

FAC ¶ 22.

    **A.**    **Plain Meaning of Policy's Terms**

    Each of the coverage provisions apply only if a Covered Cause of Loss occurred. Policy 6

("We will pay for direct physical loss of or damage to Covered Property . . . caused by or

resulting from any Covered Cause of Loss."). A "Covered Cause of Loss" is defined in the

Policy as a risk of "direct physical loss." The court determines whether words have a plain

meaning by "reference to the usual source of ordinary meaning, the dictionary." *Phillips v. State*

*Farm Fire & Cas. Co.*, 302 Or. App. 500, 506 (2020) (noting that "directly" means "without any

intervening space or time : next in order[;] . . . "in a straight line: without deviation of course."

(quoting Webster's Third New Int'l Dictionary 641 (unabridged ed. 2002)). "Direct" means

"'characterized by or giving evidence of a close esp. logical, causal, or consequential

relationship.'" *Summit Real Est. Mgmt., LLC v. Mid-Century Ins. Co.*, 298 Or. App. 164, 177

(2019) (holding that "direct loss" means "loss resulting immediately and proximately from an

event") (quoting Webster's Third New Int'l Dictionary 640).

    "Physical" means "of or relating to natural or material things as opposed to things mental,

moral, spiritual, or imaginary: material, natural[.]" Webster's Third New Int'l Dictionary 1706;

*see also* 10A Couch on Insurance § 148.46 (3d ed. 2019) ("The requirement that the loss be

'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that

are intangible or incorporeal and, thereby, to preclude any claim against the property insurer

when the insured merely suffers a detrimental economic impact unaccompanied by a distinct,

demonstrable, physical alteration of the property"). The dictionary defines "loss" as "the act or fact of losing : failure to keep possession : deprivation;" or "an instance of losing[.]" Webster's Third New Int'l Dictionary 1338.

Applying those definitions, the Court concludes that for a Covered Cause of Loss to have occurred, Plaintiff must demonstrate that COVID-19 or Governor Inslee's executive orders caused harm to or destroyed its business property or dispossessed Plaintiff of its business property.

      i.      Meaning of "direct physical loss of or damage to property"

The Business Income provision covers the insured's lost income that is "caused by direct physical loss of or damage to property at the described premises." Policy 10. The Civil Authority provision covers business income when an action of civil authority prohibits access to the insured's property due to "direct physical loss of or damage to property" at a location other than the insured's property. *Id.* at 12. Thus, whether those provisions cover Plaintiff's losses turns on the meaning of "direct physical loss of or damage to property."

The word "damage" means "loss due to injury : injury or harm to person, property, or reputation[.]" Webster's Third New Int'l Dictionary 571. Applying that definition, the plain meaning of the phrase "direct physical loss of or damage to property" is direct (without any intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to property. The plain meaning of those terms requires a Covered Cause of Loss to directly cause property to be lost or physically damaged for coverage to exist under the Business Income and Civil Authority provisions. *See Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at *5 (D. Or. June 7, 2016) ("physical loss or damage" means "any injury or harm to a natural or material thing"),

*vacated by stipulation of the parties*, 2017 WL 1034203 (Mar. 6, 2017); *Columbiaknit, Inc.*, 1999 WL 619100, at *5 ("'The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses.'" (quoting *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. and Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990))). *Cf. Wy. Sawmills, Inc. v. Transp. Ins. Co.*, 282 Or. 401, 406 (1978) (Including the word "'physical' in the phrase 'physical injury to . . . tangible property' . . . negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'").

The Civil Authority provision extends coverage for loss of Business Income and necessary Extra Expense "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Policy 14. Thus, the Civil Authority provision requires that an action of civil authority prohibited access to Plaintiff's restaurants due to the loss, destruction, dispossession of or injury to property other than Plaintiff's property for coverage to apply.

    ii.  Meaning of "direct physical loss or damage to property" and "direct loss or damage to property"

The Extra Expense coverage covers "direct physical loss or damage to property," Policy 11, and the Ingress or Egress Endorsement, Policy 66, provides coverage when "direct loss or damage to property" other than Plaintiff's property prevents ingress or egress to Plaintiff's property. Despite the slightly different phrasing, the parties do not argue that the phrase "direct physical loss or damage to property" and "direct loss or damage to property" have a different meaning from the phrase "direct physical loss of or damage to property." The Court thus

assumes, without finding, that the three phrases have the same plain meaning for purposes of this opinion.

### III.    Application

Having determined the plain meaning of the undefined terms of the Policy, the Court now applies the plain meaning of those terms to the language of the Policy to determine whether coverage exists.

#### A.    Business Income and Extra Expense Coverage

Defendant argues that the phrase "direct physical loss of or damage to property" and "direct physical loss or damage" in the Business Income and Extra Expense provisions require Plaintiff to lose of possession of its property or demonstrate a physical alteration in the condition of its property for coverage to apply. The Court agrees.

Oregon courts have construed the phrase "direct physical loss of or damage to property" and similar phrases to require some degradation in the condition of the property to invoke coverage. In *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, this Court emphasized that a policy that covers "direct physical loss"—and the inclusion of the word "physical" in particular— covers only direct damage and does not extend to consequential damages. 1999 WL 619100, at *4. Applying that construction, the Court held that the insurance policy of the plaintiff, a clothing manufacturer whose property had suffered water intrusion damage resulting in water damage to some of its merchandise, could recover only for the damage to the clothing directly damaged by the water intrusion. *Id.* at *7. The court ruled that only articles of clothing that were "physically changed in some manner" either by the water intrusion or the resulting mold and mildew spores were covered under the terms of the policy. *Id.* at *7–8.

The Oregon Supreme Court held in the context of a liability insurance policy that including the word "physical" in the terms of the policy excluded coverage for consequential or

intangible damages. *Wyoming Sawmills*, 282 Or. at 406. In that case, the plaintiff sought indemnification for damages it caused by selling defective lumber to a customer. *Id.* at 403. The purchaser used the defective lumber as studs in a building, and the studs later warped and twisted. *Id.* The court held that the policy, which defined "property damage" as "physical injury to or destruction of tangible property," did not cover consequential damages such as diminished value but did cover the cost of labor for "tearing out and putting back other parts of the building . . . in order to replace the studs[.]" *Id.* at 404, 408.

The Ninth Circuit has held that the phrase "direct physical loss" required damage to a tangible item of property. *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004) (mem.) (holding that a business property insurance policy did not cover losses stemming from the removal of a producer's name from the film credits because film credits are not tangible property); *Commonwealth Enters. v. Liberty Mut. Ins. Co.*, 101 F.3d 705, at *2 (9th Cir. 1996) (table) (holding that tenants' fear of asbestos contamination that led tenants to vacate commercial buildings was not physical loss or damage covered under business interruption provision).

The Oregon Court of Appeals has held that methamphetamine odor in a home constituted "direct physical loss" within the meaning of an all-risk homeowner's insurance policy. *Farmers Ins. Co. of Or. v. Trutanich*, 123 Or. App. 6, 9–10 (1993). The court reasoned that the "odor was 'physical' because it damaged the house." *Id.* at 10. The court rejected the insurer's argument that *Wyoming Sawmills* compelled a finding of no coverage by distinguishing the building in *Wyoming Sawmills* from the odor-permeated home and personal items damaged by the methamphetamine odor. *Id.* at 11.

In *Great Northern Insurance Company v. Benjamin Franklin Federal Savings and Loan Association*, a tenant of a commercial building owned by the insured discovered asbestos while remodeling and demanded that the insured remove the asbestos. 793 F. Supp. at 261, *aff'd*, 953 F.2d 1387 (9th Cir. 1992). After the tenant vacated the unit, the insured submitted a business interruption claim under its property insurance policy, which covered "direct physical loss or damage." *Id.* The court ruled that coverage did not exist based on the presence of asbestos in the building because "[t]here is no evidence here of *physical* loss, direct or otherwise." *Id.* at 263. Affirming the district court, the Ninth Circuit held:

> We agree with the district court, applying Oregon case law, that [the insured's] loss did not result "from direct physical loss." While [the insured] no doubt sustained consequential loss caused by the necessity of cleaning up asbestos, we conclude that it did not sustain "direct physical loss."

953 F.2d 1387, at *1 (9th Cir. 1992) (mem.).

Plaintiff's FAC does not allege a Covered Cause of Loss that would trigger coverage under any of the relevant provisions of the Policy. Plaintiff does not allege that its restaurants or the business personal property located inside them was lost, destroyed, or physically changed in any manner. Nor does Plaintiff allege that any nearby property suffered direct physical loss or damage that physically prevented ingress or egress from Plaintiff's restaurants or that resulted in an action of civil authority that prohibited access to its restaurants.

The relevant allegations in Plaintiff's FAC are: (1) "the presence of COVID-19 on property damages property. It makes it unsafe[;]" and (2) "Due to COVID-19, Plaintiff's property . . . has suffered direct physical loss and damage under the plain meaning of those words. COVID-19 has impaired Plaintiff's property by making it unusable[.]" FAC ¶¶ 11–12. Plaintiff alleges that COVID-19 located on property damages property, but, crucially, it does not allege that COVID-19 was located on *its* property and damaged *its* property or any other

property. Absent from those allegations are any facts from which a factfinder could conclude that any of Plaintiff's property was lost or damaged. Plaintiff's conclusory allegations that it has suffered direct physical loss and damage are insufficient to state a claim. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal"). The absence of facts demonstrating any physical loss or damage to its business property is fatal to Plaintiff's claim.

Amici argue that Plaintiff has alleged a plausible claim for "direct physical loss of or damage to property" by alleging that COVID-19 is present in the community in numbers that make it "statistically certain that the virus was and is present in high-trafficked restaurants." Amici Brief 7, ECF 42-1. But that solves only one part of the two-part equation. Even assuming that the virus was present in Plaintiff's restaurants, Plaintiffs' property has not been lost or damaged by the virus in a manner that required it to suspend operations in order to conduct repairs or replace the property. No such allegations appear in Plaintiff's FAC.

Numerous courts in this circuit and around the country have reached the same conclusion that this Court reaches today. *See, e.g.*, *Protégé Rest. Partners, LLC v. Sentinel Ins. Co., Ltd.*, ____ F. Supp. 3d ____, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) (finding "direct physical loss of or physical damage to" unambiguous, that it requires a "distinct, demonstrable, physical alteration of the property" to invoke coverage, and noting that every California court to address COVID-19 business interruption claims to date has concluded that "government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute 'direct physical loss of or physical damage to' the insured property."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) ("*Pappy's II*") (finding that even assuming presence of virus at the plaintiffs' business

premises, business income losses were caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property); *Uncork & Create LLC*, 498 F. Supp. 3d 878, 883 (S.D. W. Va. 2020) (no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Johnson v. Hartford Fin. Servs. Grp.*, No. 20-cv-02000, ___ F. Supp. ___, 2021 WL 37573, at *7 (N.D. Ga. Jan. 4, 2021) ("COVID-19 hurts people, not property"); *Circus Circus LV, LP v. AIG Spec. Ins. Co.*, ____ F. Supp. ____, 2021 WL 769660, at *3 (D. Nev. Feb. 26, 2021) (ruling that "pure, economic losses caused by COVID-19 closures do not trigger policy coverage predicated on "direct physical loss or damage"); *Levy Ad Grp., Inc. v. Chubb Corp.*, ___ F. Supp. ___, 2021 WL 777210, at *3 (D. Nev. Feb. 16, 2021) (same); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, ___ F. Supp. 3d ___, 2021 WL 2184878, at * (W.D. Wash. May 28, 2021) (granting insurer's dispositive motions in consolidated actions against ten groups of insurers brought by hundreds of Washington businesses and finding that COVID-19 does not cause "direct physical damage to" or "direct physical loss of" property).

Construing the allegations in the light most favorable to Plaintiff, the losses alleged by Plaintiff are purely economic and not the result of any "direct physical loss of or damage to property." Plaintiff's pleadings attempt to characterize the harmful effects of government closure orders issued in response to the public health crisis as "physical loss" or "physical damage," but no physical loss of or physical damage to its property occurred. As a result, no coverage exists under the Business Income and Extra Expense provisions of the Policy.

///

///

       i.      The Policy does not cover a "loss of functionality" of undamaged dining rooms and related property.

Plaintiff argues that the Court should apply definitions of the words "loss" and "damage" that include loss of functionality, value, or use. But that argument ignores the context in which those words appear in the Policy. "Loss" and "damage" do not appear in isolation. Instead, they are modified by the word "physical." Thus, even if in isolation the meaning of loss and damage include loss of functionality, value, or use, the modification of those words with the word "physical" means that the insured must demonstrate a loss of functionality, value, or use that is physical in nature, which requires that the loss or damage cause a tangible alteration of the physical condition, possession, or presence of the property:

> In order to trigger coverage under a direct physical loss theory, an outside peril must cause an inability to interact with the property because of an alteration to its physical status. COVID-19, and more specifically the Governor's Proclamations, may have limited the uses of the property by preventing certain indoor activities previously conducted on the premises, but they did not cause dispossession of the buildings [or the business personal property located in them].

*Ngyuen*, 2021 WL 2184878, at *10–11. The selective definition of "loss" that Plaintiff urges the Court to apply would render the word "physical" surplusage and is contrary to longstanding insurance law doctrine which provides that all-risk insurance policies are intended to cover damage to property, not economic loss. *Id.*

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Generally; "Physical" loss or damage*, 10A Couch on Ins. § 148:46 (3d ed. Supp. 2021) (footnotes omitted).

The plain meaning of the policy language and the multitude of cases interpreting identical and similar language make clear that "direct physical loss of or damage to property" does not

include a "loss of functionality" of undamaged property for its intended purpose. *See, e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021) (holding that policy covering direct "accidental physical loss or accidental physical damage" did not cover oral surgeons' "partial loss of use of its offices" due to "due to the COVID-19 pandemic and the related government-imposed restrictions.") (emphasis omitted); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 298 (S.D. Miss. 2020) ("Plaintiff's *operations* are not what is insured—the building and the personal property in or on the building are."). Even affording Plaintiff the most liberal reading of its allegations, the FAC alleges only that government orders restricted the manner in which its restaurants may serve customers, while leaving the property itself in Plaintiff's possession, unharmed, and undamaged. As a result, Plaintiff has failed to allege a direct physical loss of or damage to its covered property.

        ii.        Whether harmful agents cause "physical loss or damage"

Plaintiff relies on two cases to argue that infiltration of the COVID-19 virus into its restaurants—although Plaintiff did not allege that the virus that causes COVID-19 was actually present in its restaurants—is "physical loss or damage." The facts of both cases are distinguishable. In the first case, the policy at issue covered "direct physical loss of or damage to covered property." *Stack Metallurgical Servs. v. Travelers Indem. Co. of Conn.*, No. CIV-05-1315-JE, 2007 WL 464715, at \*9 (D. Or. Feb. 7, 2007). After a hammer disintegrated in a furnace that the plaintiff used to treat the metal medical products of its customers, the furnace began to deposit lead contaminants on the customers' products, some of which could no longer be used as medical devices. *Id*. at \*1. The court ruled:

> [I]t is only logical to conclude that the physical change in the furnace resulting from a release of lead particles, which prevented it from being used for its ordinary expected purpose, is fairly characterized as a "direct physical loss of or damage to" the furnace. . . . There is no question that the physical transformation of the furnace which rendered it useless for processing medical devices, the use for which it was

specially certified, reduced both the value of the furnace and plaintiff's ability to
derive business income from the furnace. This reduction of value was caused by an
incident that is fairly characterized as "direct physical damage."

*Id.* at *8. Plaintiff has alleged no similar physical transformation of its property.

In the second case, the court ruled that the presence of mold in a home is a form of direct

physical loss. *Prudential Prop. & Cas. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL

31495830, at *8 (D. Or. June 18, 2002) ("Because the house has visible mold which may not be

removable, the house has suffered 'distinct and demonstrable' damage. That is sufficient to

constitute a 'direct' and 'physical' loss."). Plaintiff has alleged no similar "physical change" or

"distinct and demonstrable damage" to its covered property that would trigger coverage.[2] In sum,

Plaintiff's general allegation that COVID-19 is present in the community and its argument in

response to this motion that it has sufficiently alleged the presence of COVID-19 in its

restaurants are inadequate to allege a direct physical loss or direct physical damage to its

property.

And, even if the Court construed the pleadings to sufficiently allege the presence of

COVID-19 in Plaintiff's restaurants, its argument for coverage still fails. The cases cited by

Plaintiff to establish that a noxious odor, mold, smoke, or gas renders a property uninhabitable

have characteristics that Plaintiff's case does not: First, every noxious odor, mold, or gas at issue

in those cases was a physical characteristic of the *building* that required repairs to the building to

alleviate; second, the presence of the substance rendered the property completely uninhabitable,

---

[2] *See also Or. Shakespeare Festival Ass'n*, 2016 WL 32674227, at *9; *Gregory Packaging, Inc.
v. Travelers Prop. Cas. Co.*, No. 2:12-cv-04418 WHW, 2014 WL 6675934, at *3 (D. N.J. Nov.
25, 2014) (ammonia gas); *Cooper v. Travelers Indem. Co.*, No. C-01-2400-VRW, 2002 WL
32775680 (N.D. Cal. Nov. 4, 2002) (E. coli bacteria). *But see Mama Jo's Inc. v. Sparta Ins. Co.*,
No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (finding that dust
from nearby construction did not cause "direct physical loss" because the restaurant remained
open every day, customers were always able to access the restaurant, and there was no evidence
that dust had an impact on the operation other than requiring daily cleaning).

not just dangerous to occupy in significant numbers. *See, e.g.*, *Lillard-Roberts*, 2002 WL

31495830, at \*9 (house rendered uninhabitable by mold); *Columbiaknit*, 1999 WL 619100, at \*7

("The mere adherence of molecules to porous surfaces, without more, does not equate physical

loss or damage."). Here, no characteristic of the building itself rendered it unsafe to occupy or

required Plaintiff to make repairs to make the building safe to occupy. Plaintiff's FAC alleges

that it has been able to serve takeout or delivery orders and at times has been able to serve a

limited number of customers in its restaurants' dining rooms. FAC ¶ 13. Thus, the cases in which

courts have found that noxious odors, mold, gas, and other air quality issues rendered a property

uninhabitable to an extent that amounted to "physical loss or damage" are distinguishable from

the facts of this case.

> iii.    The findings in the government closure orders do not establish that
>         Plaintiff suffered "physical loss of or damage to property."

Plaintiff argues that the Court should take judicial notice of the closure orders issued by

Governor Inslee and other mayors and governors across the country who have declared that

COVID-19 has caused "physical loss or damage" to property. Pl. Opp'n 18. Plaintiff urges the

Court to adopt the findings in those orders to establish that COVID-19 has caused "direct

physical loss" of its property. Plaintiff argues that federal courts "often recognize the superior

fact-finding capabilities of legislative bodies and executive agencies compared to courts." Pl.

Opp'n 17, ECF 41. In support of that argument, Plaintiff cites a Supreme Court case about

*Chevron* deference. *Id.* (citing *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)). In *Mead*

*Corporation*, the Supreme Court held that Customs classifications letters are not subject to

*Chevron* deference but may be entitled to some deference under *Skidmore v. Swift & Co.*, 323

U.S. 134 (1944)). *Mead Corporation* does not compel the Court to accept the various

government bodies' proclamation that the virus caused "direct physical loss of or damage to property" as fact.

### B.    Civil Authority Coverage and Ingress and Egress Endorsement

For coverage to exist under the Civil Authority provision, Plaintiff must plausibly allege that "direct physical loss of or damage to property, other than at the described premises," occurred. Plaintiff's FAC alleges that "COVID-19 caused damage to property near Plaintiff's Covered Property . . . in the same manner described above that it did so with Plaintiff's Covered Property." FAC ¶ 31. Because Plaintiff alleged only that other properties were damaged "in the same manner" as Plaintiff's property—which the Court has found not to be a Covered Cause of Loss—Plaintiff's allegations for coverage under the Civil Authority provision also fails to allege any "direct physical loss of or damage to" any other property.

The Ingress or Egress Endorsement provides coverage "when ingress or egress to the described premises is physically prevented due to direct loss or damage to property, other than at the described premises[.]" Plaintiff's complaint alleges no physical barrier to ingress and egress from its restaurants caused by "direct loss or damage to property" at a location near its restaurants. Plaintiff's conclusory allegations that a physical barrier to ingress or egress from its property are insufficient to state a claim. *See Cousins*, 568 F.3d at 1067 ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal"). The Civil Authority coverage and the Ingress or Egress Endorsement thus do not provide coverage.

Even if Plaintiff had sufficiently alleged a "direct physical loss of or damage to property[] other than at the described premises" sufficient to trigger Civil Authority coverage, Plaintiff's pleadings still fail to state a claim because Plaintiff failed to allege the other requirement for Civil Authority coverage: that the action of civil authority "prohibits access to the [Plaintiff's]

premises." Policy 12. Plaintiff argues that the plain meaning of the word "prohibit" includes hindering, difficulty, or interruption of access. Pl. Opp'n 20–21. In support of that argument, Plaintiff relies only on *Studio 417 v. Cincinnati Insurance Company*, in which a Missouri district court found that the action of civil authority that prohibited indoor dining was sufficient prohibition of access to trigger business interruption coverage. 478 F. Supp. 3d 794, 807 (W.D. Mo. 2020). However, the court's decision rested in part on the plaintiffs' allegation that the virus "attached to and deprived Plaintiffs of their property[.]" *Id.* at 800. The court's decision also rested in part a binding Eighth Circuit decision applying Missouri law that interpreted risks of direct physical loss to include the danger of direct physical loss. *Id.* at 807 (citing *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 352 (8th Cir. 1986)). Oregon courts have not adopted a similarly expansive interpretation of the phrase "direct physical loss" to include the danger of direct physical loss. Applying *Hampton Foods*, the *Studio 417* court found that a covered cause of loss had occurred. The *Studio 417* court's conclusion that the plaintiffs had plausibly alleged a claim for Civil Authority coverage stemmed from its conclusion that a covered cause of loss had occurred. This Court reaches the opposite conclusion, based on Oregon law, and finds that no Covered Cause of Loss occurred because no direct physical loss occurred that resulted in the loss of or damage to Plaintiff's property. Thus, *Studio 417* is distinguishable and, because no Covered Cause of Loss occurred, the Court need not determine whether a partial prohibition of access is sufficient to trigger Civil Authority coverage as Plaintiff alleges.

Plaintiff has failed to plausibly allege a prohibition of access—whether by action of civil authority or by means of a physical barrier caused by nearby physical damage—sufficient to trigger coverage under the Civil Authority provision or the Ingress or Egress Endorsement.

///

C.      **Sue and Labor Clause**

Defendant also moves to dismiss Plaintiff's claim that the Sue and Labor clause covers its restaurants' losses. The Sue and Labor clause places a duty on insureds to mitigate the damage resulting from a Covered Cause of Loss by taking "all reasonable steps to protect the property from further damage." Policy 22. Defendant argues that since Plaintiff has failed to allege that a Covered Cause of Loss occurred, Plaintiff cannot recover expenses relating to its mitigation of any damage under the Sue and Labor clause. Since the Court has already determined that Plaintiff has failed to allege a Covered Cause of Loss—a risk of direct physical loss—Plaintiff cannot recover under the Sue and Labor provision.

IV.     **Context within the Policy as a Whole**

When the terms of an insurance policy have plain meaning, then the Court applies the plain meaning without need to resort to other methods of contract interpretation. *Holloway*, 341 Or. at 650. However, it is worth emphasizing that the context in which the phrases "direct physical loss," "direct physical loss of or damage to property," and "direct physical loss or damage to property" appear in the Policy confirms the accuracy of the Court's conclusion that the Policy requires a direct physical alteration of the condition of the property or dispossession of the property for coverage to apply.

The Policy covers Plaintiff's business liability and provides "Basic Property Coverage." Policy 5. Section I of the Policy, which covers "PROPERTY", explains that "Covered Property" includes items of tangible property including "Buildings," which are defined as "building structures at the premises" and their fixtures, additions, and permanently installed machinery; and "Business Personal Property." *Id*. at 8. All items described in the definition of "Covered Property" are tangible items. The "Property Not Covered" also includes a list of tangible items.

*Id.* at 8–9. Nothing in the Policy suggests that Covered Property includes intangible things like profitability, business operations, and loss of the opportunity to use undamaged property to serve customers in the manner the insured desires. When read in the context of the Policy as a whole, the phrases "direct physical loss," "direct physical loss of or damage to," and "direct physical loss or damage to" refer to the loss of or damage to the Covered Property—the building, its fixtures, and the personal property in it—and the loss of business income resulting from the insured's inability to continue their business operations as a direct result of having lost or damaged that tangible property.

The definition of "period of restoration" also supports the Court's interpretation that loss of or damage to tangible property must occur to invoke coverage under the Policy. The Business Income and Extra Expense provisions of the Policy provide coverage for certain losses "during the 'period of restoration.'" Policy 10–11. The "period of restoration" starts seventy-two hours after the "physical loss or damage" occurs and ends on "[t]he date when the premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when the insured's "business is resumed at a new permanent location." *Id.* at 30. That description of "period of restoration" implies that Plaintiff must lose or suffer physical damage to its tangible property which requires repair or replacement in order to invoke coverage.

The "Loss Payment" section of the Policy which governs how Defendant will pay for damage to Covered Property also suggests that property must be physically lost or damaged to invoke coverage. That provision allows the insurer to decide whether it will

    (1) Pay the value of lost or damaged property;
    (2) Pay the cost of repairing or replacing the lost or damaged property;
    (3) Take all or any part of the property at an agreed or appraised value; or
    (4) Repair, rebuild or replace the property with other property of like kind and
        quality[.]

*Id*. at 21. The option of the insurer to decide whether to repair, replace, or take and pay the insured the value of damaged property also suggests that in order to invoke coverage (1) the loss or damage of the property must be tangible; and (2) the property must have had an initial satisfactory state that changed to an unsatisfactory state when an external force acted on the property. The "Loss Payment" provision is entirely inconsistent with the Policy covering an inability to use undamaged restaurant buildings and dining rooms. An inability to use property in the manner the insured intended is not something that can be repaired, rebuilt, or replaced.

## V.    Leave to Amend

Because the Court finds that Plaintiff's FAC cannot be amended to plausibly allege a claim under the terms of the Policy, the Court denies leave to amend. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if amendment would be futile[.]").

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss [40]. Plaintiff's First Amended Complaint is dismissed with prejudice.

IT IS SO ORDERED.

DATED:_____August 11, 2021_____.


_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge